ATTORNEY DISCIPLINARY PROCEEDINGS
LPER CURIAM.
This disciplinary matter arises from five counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Ann B. Steinhardt, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
Counts I & II — The Byer Matter
In 1998, Marcus Byer was arrested and charged with possession of a controlled dangerous substance. At his arraignment, Mr. Byer pleaded not guilty and advised the court that he would retain private counsel.
Shortly thereafter, Mr. Byer retained respondent to represent him. Respondent requested a $2,000 fee, of which Mr. Byer paid $1,300. After being retained, respondent made several appearances on behalf of her client. However, on July 15, 1999, respondent failed to appear in court on behalf of her client. The court rescheduled the hearing for five days later, but again respondent failed to appear. The following day, July 21, Mr. Byer retained new counsel to assume his representation.
Subsequently, Mr. Byer filed a complaint against respondent with the ODC. He alleged respondent failed to appear in court on his behalf, as well as neglected to respond to his requests for information about the status of his case. Moreover, he claimed respondent failed to return the unearned fee, despite his many requests.
| ¡^Respondent submitted an untimely response to the complaint that failed to adequately address the allegations of professional misconduct. As a result, the ODC issued a subpoena compelling respondent *406 to appear and answer the complaint under oath. During her sworn statement, respondent testified that she had slipped and fallen on her way to court in Mr. Byer’s case, and was rendered unconscious. She stated she never regained her memory of the events of that day and the three subsequent days. Respondent further testified she was unaware Mr. Byer asked for a refund of his fee. Respondent admitted that she never returned any portion of the $1,300 fee Mr. Byer paid, because she believed she earned the fee during the eight months she represented him.
Counts III & IV — The Toney Matter
In 1996, Jerry Toney was arrested and charged with possession of crack cocaine with the intent to distribute. He was initially represented by an indigent defender. In August 1997, Mr. Toney retained respondent to represent him in the criminal proceedings, paying her $700 of her requested $900 fee. The indigent defender also remained as counsel of record for Mr. Toney.
In October 1997, the court conducted a hearing to address motions, including a motion to suppress filed by Mr. Toney and his co-defendant. Respondent did not appear at the hearing, and Mr. Toney was represented solely by the indigent defender. Subsequently, trial was rescheduled several times. According to court minute entries, either respondent or the indigent defender appeared at various times on Mr. Toney’s behalf. Additionally, on occasion, the attorney for Mr. Toney’s co-defendant would represent both the co-defendant and Mr. Toney when neither respondent nor the |sindigent defender appeared on Mr. Toney’s behalf.[1] Ultimately, in early December 1998, the case proceeded to a two-day jury trial, at which time respondent represented Mr. Toney.
In April 2000, Mr. Toney filed a disciplinary complaint against respondent, alleging that she accepted a fee to handle his criminal matter while she was ineligible to practice law.[2] He subsequently alleged that respondent failed to communicate with him and failed to appear for a hearing on the motion to suppress.
The ODC issued a subpoena compelling respondent to appear and answer Mr. To-ney’s complaint under oath. During her sworn statement, respondent testified that she performed adequate work on Mr. To-ney’s behalf, including making court appearances, interviewing witnesses, and preparing for trial. Respondent maintained she earned the $700 fee Mr. Toney paid based solely on her involvement in the two-day jury trial.
Count V — Respondent’s Criminal Conviction
In February 2000, while driving a vehicle owned by her passenger, Patrick Coates, respondent was stopped by state troopers in Chambers County, Texas. A consensual search of the vehicle uncovered over eight pounds of marijuana in the trunk, marijuana cigarette papers, and a marijuana cigarette in respondent’s purse. In an indictment filed on May 26, 2000, respondent and Mr. Coates were charged with the felony crime of “Unlawful Possession of Marihuana in an Amount of Fifty Pounds or Less, But More than Five Pounds.”
|4On July 23, 2001, respondent pleaded guilty to the lesser misdemeanor offense of “Unlawful Possession of Marihuana in an Amount of Four Ounces or Less But More *407 than Two Ounces.” In connection with her guilty plea, respondent executed an affidavit stating that she was aware the marijuana was in the vehicle at the time of the search. Based on respondent’s lack of a prior criminal record, she was sentenced to two years probation and fined $3,000.
Respondent failed to self-report her conviction to the ODC following her guilty plea. However, she sought extensive ongoing substance abuse treatment, and in April 2002, respondent executed a recovery agreement with the Lawyers Assistance Program (“LAP”).
DISCIPLINARY PROCEEDINGS

Formal Charges

In January 2001, six months after respondent’s criminal indictment was filed, but prior to her guilty plea, the ODC filed five counts of formal charges against respondent, alleging violations of Rules 1.3 (failure to act with reasonable diligence and promptness in the representation of a client), 1.4 (failure to communicate with a client), 1.5 (failure to refund unearned fees), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.3(a) (failure to report professional misconduct), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct. | sFollowing her criminal sentencing, respondent filed a response to the formal charges admitting that she had been convicted of a drug offense.[3]
The matter proceeded to a formal hearing. The committee heard testimony from Mr. Byer, Mr. Toney, and respondent.

Recommendation of the Hearing Committee

The hearing committee found insufficient evidence to support the allegations that respondent neglected, failed to communicate and failed to return fees in the Byer and Toney matters, which were the subject of Counts I and III, respectively.
As to the Byer matter, the committee determined Mr. , Byer’s testimony was “evasive and argumentative, giving rise to a question of his reliability as a witness.” It noted that the record of the criminal proceedings indicated respondent appeared on several occasions. While it recognized that on occasions other attorneys appeared on Mr. Byer’s behalf, the committee observed this situation was not uncommon in the practice of criminal law. The committee pointed out that the record did not contain any evidence Mr. Byer requested a refund of the partially paid fee. Based on the evidence in the record, the committee found respondent’s fee was fully earned.
As to the Toney matter, the committee noted respondent appeared on Mr. Toney’s behalf at the trial and other stages of the case, and that her representation appeared *408 to be appropriate. After considering the testimony of Mr. Toney as well as the record of the criminal proceedings, the committee determined respondent acted IfiWith diligence in her defense of Mr. To-ney. The committee further determined that the $700 fee charged by respondent was not excessive.
Although the committee found no substantive misconduct in the Byer and Toney matters, it concluded respondent violated Rules 8.1(c), 8.4(a), and 8.4(g) by failing to cooperate in the ODC’s investigations of these complaints. The committee recognized that respondent did ultimately cooperate fully in the process, but it determined this later cooperation did not excuse her initial failure to cooperate.
Finally, regarding the criminal conviction, the committee determined respondent violated Rules 8.3(a), 8.4(a), 8.4(b), 8.4(c), 8.4(d), and 8.4(g) stemming from her criminal conviction and failure to report such to the ODC. It concluded the conviction adversely reflected on respondent’s fitness to practice law, and her failure to report was prejudicial to the administration of justice.
Addressing the issue of sanctions, the committee determined respondent’s initial failure to cooperate did not impede the ODC’s presentation of the case, but required the ODC to invest considerably more time in the development of the case. It concluded this misconduct warranted at a minimum a public reprimand. As to respondent’s criminal conviction, the committee concluded a sanction in the form of a deferred suspension, practice management, continued substance abuse treatment and limiting respondent’s practice would be appropriate.
Accordingly, the committee recommended respondent be suspended for a period of three years, but proposed the suspension be full deferred and subject to a one-year period of practice management with conditions.[4]
| Recommendation of the Disciplinary Board
The disciplinary board adopted the factual and legal findings of the hearing committee. Specifically, it agreed respondent failed to cooperate with the ODC, engaged in criminal activity adversely reflecting on her fitness to practice law, and failed to report her criminal conduct. The board determined respondent knowingly violated duties owed to the public, the legal system, and as a professional. It noted respondent knowingly engaged in conduct “detrimental to the order of society” based on her drug conviction. It further pointed out her failure to self-report her misconduct and cooperate with the disciplinary investigation needlessly wasted the resources of the disciplinary system.
Addressing the issue of sanctions, the board found respondent’s misdemeanor conviction did not rise to a level warranting disbarment. Nonetheless, it concluded her deliberate possession of an illegal drug runs contrary to her obligation as an attorney to perform her duties within the confines of the law.
As aggravating factors, the board recognized respondent’s prior disciplinary history,[5] failure to cooperate with the disciplin *409 ary investigation, substantial experience in the practice of law (admitted 1979), and illegal conduct, including the use of a controlled dangerous substance. In mitigation, the board considered respondent’s mental disability or chemical dependency.
In determining a sanction, the disciplinary board cited In re: Mitchell, 95-0983 (La.9/13/96), 679 So.2d 385, and In re: Mullins, 94-2245 (La.6/2/95), 655 So.2d 323, in which this court disbarred lawyers for felony drug convictions. However, the | aboard determined respondent’s conduct was not as egregious as in Mitchell and Mullins, because the offense of which she was convicted was a misdemeanor rather than a felony.
Based on its findings, the disciplinary board recommended respondent be suspended for a period of three years. The board determined such a suspension would serve to protect the public and educate the bar as to the seriousness of the misconduct.
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Having reviewed the record, we find no error in the hearing committee’s factual conclusion that the ODC failed to prove substantive misconduct in the Byer and Toney matters by clear and convincing evidence. The ODC relied on the testimony of Mr. Byer and Mr. Toney to establish that respondent failed to represent these 19clients diligently and failed to refund unearned fees; however, the hearing committee found these witnesses were not credible. Although this court is the trier of fact in bar disciplinary cases, we are not prepared to disregard the credibility evaluations made by those committee members who were present during testimony of the witnesses and who act as the eyes and ears of this court. In re: Bolton, 02-0257 (La.6/21/02), 820 So.2d 548.
While we find no substantive misconduct in the Byer and Toney matters, we find the record supports the conclusion that respondent failed to cooperate with the ODC during its disciplinary investigation of these complaints. In both instances, the ODC was required to issue subpoenas to respondent for sworn statements when she failed to respond to its inquiries in a complete and forthright manner. Although respondent later cooperated with the ODC, this does not excuse her failure to comply with her duty as a lawyer to fully cooperate with the ODC at all stages of the disciplinary investigation.
*410 Finally, as to respondent’s criminal conviction, the undisputed evidence in the record establishes that respondent was convicted of misdemeanor possession of marijuana.[6] Respondent served no jail time but was placed on probation for two years. Thereafter, respondent failed to report her conviction to the ODC, despite the clear requirement that she do so under Rule 8.3(a). Both her conviction and failure to report this conviction to the ODC represent clear breaches of her fundamental duty as a lawyer to uphold the integrity of the bar. See Louisiana State Bar Ass’n v. Weysham, 307 So.2d 336 (La.1975).
hnHaving found professional misconduct, the next issue presented for our consideration is the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; Louisiana State Bar Ass’n v. Fazande, 436 So.2d 549 (La.1983); Louisiana State Bar Ass’n v. Jacques, 260 La. 803, 257 So.2d 413 (1972). Rather, disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s failure to cooperate harmed the disciplinary system by requiring the ODC to expend its limited resources needlessly. Respondent’s criminal conviction adversely reflects on her fitness to practice law and her subsequent failure to report the conviction was prejudicial to the administration of justice. Nevertheless, the record contains significant mitigating evidence which bears on the determination of an appropriate sanction. In particular, the record demonstrates that respondent has acknowledged her substance abuse problems and has taken positive steps to address these problems. She has successfully completed a residential substance abuse treatment program and has entered into a recovery agreement with LAP. By the time of oral arguments in this case, respondent had been alcohol and drug free for more than three years. While we in no way condone respondent’s past illegal drug use, nor do we minimize the seriousness of her drug conviction, we find the imposition of the entirety of the three-year suspension recommended by the disciplinary board would ^require us to ignore respondent’s sincere attempts at rehabilitation and would be excessively punitive.[7] Considering all the circumstances, we conclude it is appropriate to defer two years of the suspension, subject to a two-year period of supervised probation during which respondent shall fully and completely adhere to all terms of her LAP recovery agreement and with such other conditions as may be imposed upon her by the LAP. We caution respondent that any violation of this condition, or any other misconduct during the probationary period, may be grounds for making the deferred portion *411 of the suspension executory or imposing other discipline, as appropriate.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Ann B. Steinhardt, Louisiana Bar Roll number 12437, be suspended from the practice of law for a period of three years. Two years of this suspension shall be deferred. Following the completion of the active portion of her suspension, respondent shall be placed on supervised probation for a period of two years, during which she shall fully and completely adhere to all terms of the recovery agreement that she executed with the Lawyers Assistance Program, and such other conditions as may be imposed upon her by the Lawyers Assistance Program. Any violation of this condition or any other misconduct during the probationary period may be grounds for making the deferred portion of the suspension executory or imposing other discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Apparently, neither Mr. Toney nor his co-defendant objected to this arrangement.

. Respondent was ineligible to practice between August 16, 1996 and August 24, 1998 due to her failure to comply with the mandatory continuing legal education requirements.

. Initially, respondent requested additional time to answer the formal charges because she was entering a residential substance abuse treatment program in Texas for a period of several months to address her drug and alcohol dependency, and was unable to assist in her defense. As respondent's criminal proceedings had not been concluded, the hearing committee panel granted a continuance, giving respondent twenty days after the final judgment in her criminal proceedings to file a response. In accordance with the hearing committee's order, the ODC received correspondence from respondent stating that she had pleaded guilty to misdemeanor possession of marijuana, had been placed on probation, and enrolled for follow-up substance abuse treatment.

. The committee recommended the following conditions:
1. Respondent shall continue treatment for substance abuse;
2. Respondent shall fully complete all continuing legal education requirements; and 3.Respondent's law practice shall be limited to misdemeanor and traffic offenses.

. Respondent was admonished in April 1999 for failing to cooperate with the ODC in a disciplinary investigation. Additionally, respondent has been declared ineligible to practice on several occasions based on her failure *409 to pay her bar dues or comply with the mandatory continuing legal education requirements.

. Although respondent executed an affidavit stating that she knew there was marijuana in the car she was driving, the only evidence in the record establishes the marijuana belonged to her boyfriend who was the owner of and a passenger in the vehicle.

. This is particularly so when the ODC did not seek respondent’s interim suspension while she was actually addressing her substance abuse problem.