ATTORNEY DISCIPLINARY PROCEEDINGS
JjPER CURIAM.*
This attorney disciplinary proceeding arises from formal charges filed by the *1073 Office of Disciplinary Counsel (“ODC”) against respondent, Donald L. Mayeux, an attorney licensed to practice law in the State of Louisiana.
UNDERLYING FACTS
The underlying facts are not disputed. In April 1992, Bernice Tyler retained respondent to represent her in a personal injury matter. Respondent personally guaranteed Ms. Tyler’s medical expenses and advanced her monies for living expenses and medical tests during the course of the litigation. The case proceeded to trial in 1994. Although respondent successfully obtained a judgment in favor of his client which totaled $42,483.89, including judicial interest, the amount of this judgment was not sufficient to cover respondent’s attorney’s fees and all of the costs and medical expenses. Despite this fact, respondent reduced his legal fee in order to give Ms. Tyler $2,000 from the proceeds of the judgment.
| ¡After obtaining the required endorsements on the settlement draft,[1] respondent deposited it into his collection account,[2] rather than his trust account, with the intent of attempting to negotiate a reduction in the medical expenses of the third-party medical providers. Over the next several months, it is undisputed that on several occasions, the balance of respondent’s collection account dropped' below the amount held for these third-party medical providers, and on at least one occasion dropped to zero. By September 1994, respondent successfully negotiated a reduction in the medical expenses and fully paid all the third-party health care providers. As a result of the reduction in the medical[1] expenses, respondent was able to cover his attorney’s fees, and he refunded an additional $300 to Ms. Tyler.
DISCIPLINARY PROCEEDINGS
In July 1997, Ms. Tyler filed a complaint with the ODC; In reviewing the documentation submitted by respondent in connection with the complaint, the ODC concluded that respondent improperly commingled and converted the funds he retained from the judgment to pay the third-party medical providers. The ODC subsequently filed formal charges against respondent, alleging his conduct violated Rules 1.3 (failure to act with diligence and promptness in representing a client), 1.15 (safekeeping property of a client or third person), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s' honesty, trustworthiness,’ or fitness as a lawyer), and 8.4(c)" (engaging in conduct involving dishonesty, fraud,, deceit, or misrepresentation) of the Rules of | ¡¡Professional Conduct. Respondent timely filed an answer to the formal charges, and the matter was set for a formal hearing before the hearing committee.

Hearing Committee Recommendation

At the hearing, the ODC presented evidence showing that respondent commingled the Tyler settlement funds by placing them in his collection account, rather than his trust account. It further produced evidence that respondent converted the funds, because the balance in his collection account dropped below the amount of the retained funds on several occasions.
Respondent testified on his own behalf and denied any misconduct. Although he admitted that he deposited the settlement draft into his collection account, not into his trust account, he pointed out that he had personally guaranteed all of the medi *1074 cal expenses incurred by Ms. Tyler, and the balances owed to the medical providers were his personal obligation.[3] Thus, respondent argued that this portion of the judgment did not represent funds belonging to a client or a third party. Moreover, he contended that because of the unique way his accounts were set up, the funds were never in any danger. He explained that the money in his collection account was actually linked to his money market account (known as a “Hi-Fi” account) and was additionally protected by a $10,000 line of credit.[4]
|4After considering the witness testimony and documentary evidence, the hearing committee concluded respondent “unintentionally” commingled client/third-party funds, thereby committing a “technical violation” of Rules 1.15 and 8.4(a) of the Rules of Professional Conduct. However, the committee found there was no clear and convincing evidence that respondent converted or misappropriated the funds to his own use. Additionally, the committee found there was no evidence to support a finding that respondent violated Rules 1.8, 8.4(b), or 8.4(c) of the Rules of Professional Conduct.
Turning to the appropriate discipline for respondent’s misconduct, the committee recognized as an aggravating factor that respondent has a prior disciplinary record. However, as a mitigating factor, it found there was no evidence of harm to respondent’s client or to any third party. Considering all these factors, the committee recommended that respondent be publicly reprimanded and ordered to pay the costs of these proceedings.
The ODC objected to the recommended sanction as too lenient. Respondent objected and asked that the formal charges be dismissed.

Disciplinary Board Recommendation

The disciplinary board found the record supported the hearing committee’s findings of fact. The board agreed that a commingling of funds occurred in violation of Rule 1.15(a)[5] when respondent failed to place Ms. Tyler’s settlement check in his trust account. However, the board rejected the charge of conversion, based on evidence of respondent’s banking arrangements, specifically his “Hi-Fi” account and | s$10,000 line of credit. The board felt that no actual injury or harm resulted from his actions, and considering the banking arrangements, there was little, if any; potential for harm. The board also concurred in the hearing committee’s assessment of the aggravating and mitigating circumstances.
As a sanction, the disciplinary board recommended that respondent receive a fully deferred three-month suspension, subject to six months of supervised probation with conditions.[6] The board also recommended *1075 that respondent be assessed with all costs and expenses of these proceedings.
Both respondent and the ODC filed objections in this court to the disciplinary board’s recommendation, and the matter was set on the court’s docket for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
It is well settled that a lawyer must deposit all funds of a client paid to him, other than advances for costs and expenses, in an identifiable client trust account. Rule 1.15 of the Rules of Professional Conduct; Louisiana State Bar Ass’n v. Krasnoff, 488 So.2d 1002 (La.1986).
Un the instant case, the record clearly demonstrates that respondent commingled funds in violation of Rule 1.15 of the Rules of Professional Conduct when he deposited' Ms. Tyler’s settlement check into his collection account, rather than his trust account. Respondent attempts to argue these funds were his personal funds because he had personally guaranteed Ms. Tyler’s medical expenses, and were not third-party funds because the medical providers at issue had not asserted a privilege on the judgment proceeds pursuant to La. R.S. 9:4751 et seq. We agree that, as a practical matter, the third-party providers may have looked solely to respondent for payment of the medical expenses. Nevertheless, the fact remains that his client is legally liable for her medical expenses, regardless of respondent’s guarantee or the absence of an assertion of a statutory privilege by the medical provider.
As such, the settlement check contained property of a client or third person, and under Rule 1.15, respondent was bound to safeguard the funds separate from his own by placing them in his trust account. The lawyer’s mistake, good faith, or lack of conscious wrongdoing does not negate an infraction of the rule, Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), but bears only on the penalty to be imposed.
As to the conversion charge, it is undisputed that on several occasions, the balance of respondent’s collection account dropped below the amount he withheld from the Tyler settlement to pay the medical providers, including at least one occasion when the balance of the account was zero. Respondent concedes these facts but argues that due to his banking arrangements, the funds were fully protected at all times. While we agree the funds may have never been in actual danger .of loss due to the presence of respondent’s line of credit and other accounts, there is no basis in the professional rules or in the jurisprudence for a finding that an attorney who has |7sufficient personal assets to cover client or third-party funds under his care is immune from a charge of conversion.
Turning to the issue of the appropriate sanction for respondent’s misconduct, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profes *1076 sion, and to deter other lawyers from engaging in violations of the standards of the profession. ■ Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990).
We find there are significant mitigating factors present in this case. The record demonstrates that no actual harm resulted from respondent’s misconduct, either to a client or to a third party, and respondent gained no personal benefit from his misconduct. In fact, respondent refunded $2,000 of his attorney’s fees to the client in order to give her some money from the short recovery, and refunded an additional $300 to her after successfully negotiating a reduction in the medical expenses. Additional mitigating factors are the absence of a dishonest or selfish motive, cooperative attitude toward the disciplinary proceedings, character and reputation, and remorse. The only significant aggravating factor present is respondent’s prior discipline,[7] which is unrelated to the conduct at issue.
Considering all these factors, we conclude a public reprimand is the appropriate sanction in this case.
| ¡¿DECREE
Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Donald L, Mayeux be publicly reprimanded. All costs and expenses in this matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
VICTORY, J., dissents and assigns reasons.
TRAYLOR, J., dissents for reasons assigned by VICTORY.
KNOLL, J., dissents and assigns reasons.

 Kimball, J., not on panel. Rule IV, Part II, § 3.

. The settlement draft was payable to Ms. Tyler, respondent, and Haik & Minvielle, the law firm which represented the hospital where Ms. Tyler received medical treatment following her accident. Pursuant to La. R.S. 9:4751 etseq., the hospital asserted a privilege on the judgment proceeds in the sum of $1,490.58. To secure Haik & Minvielle's endorsement on the settlement draft, respondent issued a check in that amount payable to the law firm.

. Respondent advances his clients’ expenses from his collection account.

. Respondent submitted affidavits from several of Ms. Tyler’s health care providers to the effect that each provider looked solely to respondent for payment of Ms. Tyler’s medical expenses, and that had respondent not guaranteed her expenses, the provider would not have treated Ms. Tyler.

. In addition to the collection account previously discussed, respondent maintains three other checking accounts: a regular account, from which he disburses his office expenses; a trust account, for funds in which clients and third parties have an interest; and a "Hi-Fi” account, a money market investment account. As the balance increases in the collection account, idle funds are transferred to the "Hi-Fi” account in order to earn interest; as the balance decreases in the collection account, funds are transferred from the “Hi-Fi” account. Given the way the collection and "Hi-Fi” accounts function, respondent testified that he considered the accounts as one. Respondent also has a $10,000 line of credit connected to the collection account.

.The board also recognized that it was constrained to find a violation of Rule 8.4(a), but concluded that finding "does not add anything to the case.” The board felt that respondent's violations were "technical,” although it conceded that this assessment relates only to the sanction to be imposed.

. The board recommended the following conditions:
1. A probation monitor shall be appointed pursuant to Rule XIX, Appendix C, of the Rules of the Louisiana Supreme Court;
*1075 2. Respondent will maintain his trust account during the period of probation in accordance with the Rules of Professional Conduct which address the safekeeping of client property;
3. Respondent will provide, via his probation monitor, satisfactory evidence of maintenance and use of the trust account to the Office of Disciplinary Counsel at three month intervals following the Court’s imposition of sanctions; and
4.Respondent will attend the next session of the Ethics School held bi-annually by the Louisiana State Bar Association Prac- , tice Assistance and Improvement Committee, including specific training in the ■ use of trust accounts, and produce evidence of such participation to Disciplinary Counsel.

. Respondent has two instances of prior discipline. In 1996, he was suspended by this court for nine months, fully deferred, and placed on probation for two years for his failure to properly represent a client in a Social Security matter. In re: Mayeux, 96-0981 (La.6/7/96), 673 So.2d 1009. Respondent was also privately reprimanded in 1989 for failing to file an appellate brief on behalf of his client, resulting in the dismissal of the appeal.